Okay, the next case is number 15-1265, Pfizer, Incorporated, against Lee. v. Lee Mr. Papakoskis. v. Papakoskis Morning, Your Honors. May it please the Court. Your Honors, the question here is what is sufficient to qualify the notice under the applicable statutes for patent term adjustment such that the notice will stop the clock on the accrual of office delay, and the type referred to here is the type we commonly refer to as a delay. How do you draw the line? Because apparently you think that some deficiencies in the notice are tolerable, it can still be a notice even though as a result of negotiation it's changed. And is it the clarity of the error that makes it not qualify as a notice? v. Lee I think that's one way. I think that where we're actually drawing the line here, and to put things in context here, we're talking about the threshold sufficiency issue and not necessarily an issue where there's a legitimate dispute regarding the merits of an office action, whether that be a rejection or restriction requirement. So, for example, if a restriction requirement was issued that took into account all the or the, you know, there's a provisional election with Traverse, and then the patent office ends up coming around to the applicant's argument, that's part of the normal give-and-take process, and that's actually what happened later on in the prosecution. v. Lee So the notice then would qualify. v. Lee That's right. In this case, you know, we had a notice that attempted to group 144 pending claims into 21 separate and distinct groups. Now, the grouping of the six omitted claims, so I guess backing up a second, six of the 144 pending claims were failed to play up in any group, and it's not a simple sort of one-to-one. v. Lee So you're saying it's an obvious error, and because it's an obvious error, it doesn't qualify as a notice? v. Lee The omission of the claims, you mean? v. Lee Yeah. v. Lee Yeah, and I would posit even further, though, that the grouping of the claims that were omitted wasn't necessarily, with respect to each one of those claims, clear as to one-to-one matching up a dependent claim with the group that had the corresponding independent claim, for instance. If we take just claim 106 as an example, that claim was dependent on claim 98, which the parties, I think, both incorrectly called that an independent claim in the briefing. Claim 98 depends off of a couple other claims for the purposes of today's discussion. The argument is the same. Claim 98, from which 106 depended on, was placed into eight different groups. v. Lee So would it be fair to say that you're saying that two things have to be present, one, an obvious error, and one that made a difference in the way the applicant would have addressed the notice? v. Lee I think that's exactly right, Your Honor, because if you look at the MPEP chapter on, for example, situations where a reply period is reset or restarted, that's chapter 710.06, that chapter actually calls out situations like that. And one of those situations is where an office action contains some other error that affects the applicant's ability to reply to the office action. And so the patent office, in interpreting the statute, has at least promulgated this instruction for its examiners in terms of when do we reset or restart a reply period. And the error has to be, according to the patent office, something that affects the applicant's ability to reply. v. Lee Well, and the statute itself says that 132 requires an applicant at least be informed of the broad statutory basis for the rejection of his claim so that he may determine what the issues are on which he can or should produce evidence. Now, I mean, I'm with Judge Dyk here. There's two extremes. I mean, if you read the district court opinion at its face value, it would seem to say all the PTO would have to do is send a piece of paper that purports to be under 132, and that would be the end of it. But, you know, it's unclear whether you made an alternative argument to the district court. But at the other end of the spectrum, I mean, just because there's some error doesn't mean that there isn't enough information for you to respond. And so that's the real question. I mean, you knew that one of the problems here was that there were certain claims that were omitted. You could respond as to the other claims. You could also respond by saying, what about these omitted claims? I mean, wasn't there enough to give you something to respond to? Well, I think there's two answers to that. And so, first of all, I think the language that you pulled is from one of the cases that looked at this, I think Chester v. Miller, right, talking about the broad statutory basis. And in the statute, it says that the director shall notify the applicant, and I'm skipping over some of this stuff, the information and references as may be useful in judging of the propriety of continuing the prosecution of this application. So, yes, we're not making a sort of footfault argument where any clerical error in an office action automatically resets the reply period. What we're saying is that in this particular case, if you go and you look at the record, the applicants, when they noticed that there was a problem with the restriction requirement, that there were six omitted claims, followed the steps outlined in the NPEP, Section 710.06. They brought the deficiency to the examiner. And then the examiner told the applicants that they would redo and resend the restriction requirement. What if the examiner had simply said, let me send you some more information, let me amend the restriction requirement, rather than pulling it? I think they could have done that, you know, in... Would that have changed things? I think that had... So, of course, examiners are able to make restriction requirements orally, and applicants are able to elect groups orally over the phone based on the PTO's telephone practice. That just didn't happen in this case. And for whatever reason, the examiner took it upon themselves to say, you know what, I see we messed up this restriction requirement, we're going to redo it. What's the answer to the question, would it have made a difference if there had been an amendment rather than a new notice? You mean an amendment by the examiner? Yeah. I'm not sure what the actual procedure to do so... Do you mean an amendment just right then over the phone? Well, no. The examiner sends out later a document which is titled amended notice, so that there's no withdrawal of the original one and a substitute one. You know, without getting sort of tied into the nomenclature of whether something got vacated or withdrawn or rescinded, it may have made a difference, but I think that any time that... Provisions in MPEP 710.06, I know I keep going back to this chapter, in the manual, I think any time you follow those provisions, you go through it and the applicant brings a problem up with an office action to the examiner. The examiner at that case could do what they did in UMass, which is the case both parties briefed, and say, I don't think that affects your ability to reply, you guys need to still respond and then make your arguments and then we'll enter the normal give and take of patent prosecution. Let me tell you what my concern is here. I understand your argument and I'm not unsympathetic to it. That in this case, you had some difficulty in responding to it because it wasn't clear which way the dependent claims were going to be resolved. They didn't automatically follow the independent claims. I understand that. But what concerns me is the possibility of sandbagging. In other words, that the applicant notices this error and then waits six months, which is pretty much what happened here, to raise it with the PTO, thereby earning six months of applicant delay, though actually in this case it only should have been three months. So what's the problem with that? I mean, if a claim is left out, that would seem to be something which was pretty obvious in the beginning. Why shouldn't the rule be, for example, that the applicant gets the amount of a delay that would give it an adequate amount of time to notice the error and then the amount of time that would have been taken to correct the error so that we don't have a situation where the applicant can say, well, I noticed this error. I'm going to wait until the last minute to raise this so I get a full 90 days or three months of PTO delay. Well, I think, and I appreciate the competing concerns here, and I think that there's two answers to that. Firstly, the reply periods have been set by statute and the potential extensions to those reply periods have been already considered. You didn't comply with the requirements. You should have replied in three months rather than six months. Well, there's the three-month stationary reply period, correct, and then there's the, you can extend it out three more months. But they didn't, right? No, they did. They did? They paid for the extension under CFR 37 CFR 1.1. So there's a formal extension of the three-month period? That's right. So it was within the time period to reply. Yeah. But, so there's actually two tiers of an answer here, and I apologize for going back to MPEP 710.06, which I'll do in a moment. But firstly, to the extent that a restriction requirement just doesn't meet the statutory requirements of Section 132, then there's no reply period in the first place. So it's not like there's a time period within which to respond. And in fact, judging from the PTO's briefing on this issue, they seem to have drawn a distinction between whether the PTO unilaterally decides to amend the office action or not should be one of the deciding factors. But even assuming that the time period to reply had started, the patent, the applicant had brought this question up. So what about the delay? I mean, what about the fact that you waited until the very last minute to raise this? So under MPEP 710.06, the Patent Office has already considered what happens to your reply period based on when you bring the defect up to the office. There is, for example, if you notice a defect within the first month of receiving an office action, and you bring it up to the Patent Office within that first month, the office has decided in the MPEP that the office will restart the previously set reply period for reply to run from the date the error is corrected. So they just give you your same reply period and they reset it and they start it from the date your error is corrected. That's not really the issue, is it? I don't think the office is arguing that this particular applicant had an obligation to pick up this case and respond to the official action sooner than the statutory periods or an extended statutory period. But what I observe is that as soon as the applicant did in the normal course of business, so it appears, no one says otherwise, find the error, tells the examiner, the examiner says, oh my goodness, I made a mistake and fixes it. Almost immediately, within a couple of weeks, I think. That why would there should be, even on the most benevolent understanding, an entitlement to an extension for any longer than that period that it took the examiner to correct the admitted error? You're asking for months of extension, not a week or two. That's right, and I notice that I'm in my rebuttal time. How does that fit in with even your theory of the case? Well, I think, and notice I'm in my rebuttal time. I can answer your question. Thank you. I have to bring it back to the office has decided that if you bring the error up to the office after the first month of receiving office action, it has decided that the office will set a new period for reply to substantially equal the time remaining in your reply period, but not less than one month. But nevertheless, that time period for reply does get reset and that's just something the patent office has thought about and decided on. But in this particular case, you were able to completely reply. In fact, you even argued for recategorization of some of the omitted claims without having to have a response or an amended classification of the claims. I mean, you knew what they were aiming for. You knew where those claims were going to fall. The applicants were only able to reply after receiving a corrected restriction requirement. So only after they received the February 23, 2006 restriction requirement did the applicants then engage in the normal give and take process of prosecution and look at the restriction requirement and say, for instance, we think claim 106, you've placed it in group 11. We think it also should be placed in group 6. But that only happened after the office issued its corrected reply. Why should you get months and months of delay when it was your failure to raise the error promptly that caused the delay? You're getting the benefit of the fact that you waited six months to call this to the attention of the PTO and you're saying that whole six months gets counted as a delay. I think we have to think about the policy then in terms of why these time periods are set, the time periods for reply. A patent examiner has many, many applications on their docket. A patent prosecution attorney at a place like Pfizer has hundreds of applications on their docket. And they keep how they manage their time based off of these time periods for reply that they've been given by statute and by the patent office itself. So the fact that a patent prosecuting attorney may have turned to the application later on in the allowed time period for reply, I mean, that's just part of the time period for reply. So it's not really delaying. And again, the NPEP Chapter 710.06 contemplates various reset reply periods and the lengths of those reply periods based on the timing of when one brings a defect or a deficiency in an office action to the attention of the patent office. And in fact, if you bring it up after your allowed time period for reply, NPEP 710.06 is clear and it says that if it's called to the attention of the office after the expiration period for reply, the period will not be restarted and any appropriate extension fee will be required to render a reply timely. So the patent office, back in the early 2000s, already thought about at least some of these issues and made the policy call to treat it the way it's treated in the NPEP. And I see that I'm well over time. We'll save you rebuttal time. Thank you, Your Honor. Mr. Bargan. Thank you, Your Honor. Good morning, Your Honors and may it please the Court. Dennis Bargan from the Department of Justice on behalf of the United States Patent and Trademark Office Director in this action. Section 154B is clear and unambiguous. Once the USPTO issues one of the notifications under Section 132, any additional patent term adjustment in the form of a delay ceases. See, you don't really argue that no inquiry should be made into whether or not what is issued actually qualifies under 132, do you? No, we're not suggesting that at all. And I understand Your Honor's concern about the wording of the district court's opinion. I don't think that's what the district court was after there as well. Where would you draw the line? Excuse me, Your Honor. Where would you draw the line? I think that the statutory language is clear that the only inquiry is the minimal bar that Section 132 places in the patent. No, but there's some notices which in the patent office's view are not going to qualify, right? Absolutely. How do we draw the line? Where's the line drawn? The line is drawn by both Section 132 and its language and this court's decisional authority interpreting that language. But this is an admitted mistake. It is certainly a mistake, Your Honor. There's no argument about that. There's no argument that it is a mistake. The question is whether it is a mistake that renders the office action here, the restriction requirement, so uninformative, to proceed with the application. But that wasn't really an issue. This was a much more open and casual interaction. The patent attorney getting ready to file the response to make the election out of his 100 and some claims there are seven that the examiner forgot about. So he tells the examiner. Correct. And the examiner says, my goodness, yes, fixes it immediately. Correct. So there isn't any issue of gaming the system or bad faith or anything else. An easy mistake to make but needs to be corrected. Otherwise, as has been pointed out, there can down the road be curious consequences. But it was corrected right away. That is correct, Your Honor. But there was a delay. At least the delay that it took to correct the mistake. And it wasn't the applicant's fault. It was the patent office's fault. So where does this put us in terms of looking to see how to correct and compensate for office delay? Yes, Your Honor. A couple of responses to that. First, the question here isn't whether it is a delay in the abstract, whether it is a delay that is the fault of the patent office. The statutory language is clear that only certain delays... We know the mistake was the fault of the office. Correct. Not the end of the world, but it was a mistake that had to be corrected. That is correct, Your Honor. But the statutory language only provides for patent term adjustment in the area of certain types of mistakes made by the patent office and certain delays that are attributable to the examiner. It is not simply that all delays that can be in one way, shape, or form attributable to the examiner are awarded with patent term adjustment. And here... This takes us to Judge Dyke's question, where do you draw the line? And we draw the line at those office actions that are so uninformative that they fail the very minimal bar of Section 132. And here we need look only at the record to determine that this office action, this restriction requirement was sufficiently informative to allow... Why is that true? Because as I understand it, this is not a situation in which the dependent claims followed automatically the categorization of the independent claims. And so why didn't they need to know what the examiner was saying about the proper characterization of the dependent claims in order to respond? Well, there are two answers to that. First, I agree with Your Honor that the placement of the... Excuse me, the dependent claims did not perhaps automatically follow from their independent claims, but they are rather close. And I think a review of both the claim at issue... One of the main claims at issue here, Claim 106, and its dependent claim, Claim 98, when combined with the very detailed 21 categories of inventions that are found in the first restriction requirement, leave their little guesswork as to where the examiner would have placed Claim 106. This is my problem, though. This is the workability problem. I mean, you make a very good argument that you can figure all this stuff out and where those omitted claims would have ended up and there wasn't actually a very dramatic change as it relates to anything in terms of where things fell out. But should we, or should the lower court, be getting into those weeds every time we have this debate? Or should it simply be a question of if you're going to have to go through that analysis, then we ought to assume that if the error was that of the office, that the office should just be charged with it? I agree with Your Honor. As our brief indicates, we are concerned about the same thing, not only from an Article III court perspective, but also from an agency workability perspective. But I think that that only highlights the reason why the low bar of Section 132 is the proper touchstone. That this court, on a number of occasions, has construed Section 132 to place a very, very minimal hurdle in the path of the examiner. Simply to provide the broad statutory basis for the rejection or restriction, in this case, of the claims at issue. That's In re Hughes. And to make sure that the office action is sufficiently informative to allow the applicant an idea or an ability to move the application forward and make a decision as to, A, how to traverse that application, and, B, whether to traverse it at all. There is another bright line approach to this, which is what Judge Newman suggested. And that is to give them the amount of delay between the withdrawal of the original application or the recognition of the error by the examiner and the issuance of the new notice. So, that would be easy enough to calculate. It doesn't get into all the weeds and difficult issues that we've been talking about. So, why not at least give them that amount of delay? Well, even if I were to agree with Your Honor's analysis about the workability and the equities involved, unfortunately, it doesn't flow from the statutory language because the statutory language is clear that a delay ceases at the moment that an initial notification under Section 132 is issued and that if there is a time period between the 14-month mark after the application's filing and the filing of that notification, one day of patent term adjustment is provided for each of those days. So, there is simply no statutory hook, if you will, to provide the type of calculation that Judge Newman has articulated. What if one of the claims that was omitted in the restriction requirement was an independent claim? Would that change things? I don't think that it would, Your Honor. I think it would certainly make it a closer call, but I don't think that it would make a difference here because what this restriction requirement did was provide A, that all 144 claims were subject to restriction. B, provided 21 extremely detailed categorizations of separate and distinct inventions. The remaining aspects of this portion of the very elongated examination that led to this patent is a matter of advocacy. Pfizer's attorneys could very simply have looked at those 21 separate and independent claims and made an argument about where the omitted claims belong in their own interest. And the examiner would have considered that and made a decision about whether he or she No, the examiner is just as likely to say this is non-responsive, schools out, case abandoned. I doubt that the examiner that would see a traverse that read as I just stated would say that this is not responsive. Especially in the face of seeing that he or she made the type of error that we're talking about here. Well, exactly. And openly  there obviously wasn't any adversarial situation. The mistake was corrected. However, it did set back the examination. I think you certainly could argue that it set back the examination. But we don't have to argue. We just look at the record. They said then they had to go back and make their election and proceed having had this lapse of time because of the office mistake. But I think we could also make the argument, Your Honor, that Pfizer having had six months to look at the initial restriction requirement and then seeing the You know very well it doesn't work that way. You can have a six-month period to respond to an office action and in a timely manner you look to see what you have to do. If the rule is going to change to change the entire practice of patent prosecution in the nation that you must immediately take up every office action that you get to see if there's something you want to grumble about. All you do is increase the cost for the client and add to an already heavily bureaucratized system that's extremely difficult to cope with. But again, Your Honor, even accepting everything that you've just said, I think that that only highlights the reason for a bright line rule about what types of delays and what types of errors in office actions allow for additional Why shouldn't the bright line be error? Clear error. It's clear error. But that's because A minor error but clear error. But that minor error does not render the office action in question void They don't say that it was void. They just say that it just took them longer. It added to the period of prosecution because the error had to be corrected. But under Section 154B the only types of errors that and delays on the part of the Patent Office that are rewarded or awarded for lack of a better term with additional A delay are those that are that violate Section 132 that are so uninformative that do not allow the applicant the understanding of what the basis of the rejections are or the restriction requirement and prevents them from making an argument going forward. I respectfully submit to Your Honor Excuse me. You made a You made a argument in your brief that I found to be a little troubling and I'm going to challenge you to tell me you don't really mean it hopefully and that is that you made the argument that well if we caught it ourselves and corrected it then then you could get A delay for that but if you have to point it out to us and we correct it then by definition you were able to respond. That's not really your position. That's certainly not the underpinnings of what we're suggesting Your Honor. We do in the two decisions that the two administrative decisions that have not been subjected to judicial review in any way that are cited by my opponents Oncolitics and Yonsen. Part of the difficulty in those cases the difference excuse me between this case and that is that the examiner unilaterally took action. Now obviously there was more going on in those cases Just saying now that shouldn't be a factor. I don't I don't know that that shouldn't be any factor Your Honor and I and I'll and the reason for that is this when the examiner takes In those cases it seemed to cut the other way because the examiner made the correction that that gave them the A delay. Correct. And there is a rationale for that and the rationale for that is where the examiner unilaterally takes action it takes the examination away from the applicant. It presupposes that the applicant believes that the restriction requirement or the office action is so uninformative that they can't make an argument. But in this case the examiner quickly said oh yeah you're right this is wrong I gotta fix it I'm gonna withdraw it and start over. I mean if the examiner had just happened to look at the file during that six month period the examiner might well have pulled it himself right? Or herself. I would hesitate to say it would be likely that an examiner would in looking at the file notice Let's assume Let's assume that that happens. Yes. If that were the case and it was this type of error I don't want to speak for the office in how it would decide that case but I'm not sure that that in and of itself would warrant additional patent term adjustment. But again unilateral action on the part of the examiner is different than part of the give and take of patent prosecution. We need to interpret statutes so as also not to lead to absurd results and if we were not to award PTA in the instance of an unilateral action on the part of an examiner that would allow an examiner to continue to revise office actions over and over and over again unilaterally kicking the examination can down the road without any additional a delay patent term adjustment and the office is simply unwilling to allow that type of interpretation to stand. Just one last question here. Do you agree that they were entitled to six months to reply? Yes. We do. Under the MPEP provisions yes they were. I will note though that in that regard that nothing in section 154B or section 132 imports the minutia if you will of the MPEP into the question of whether this is the type of error that would give rise to more a delay and I thank the court for its time this morning. Okay. Good. All right. Thank you, Mr. Byron. Mr. Papakopoulos. Your Honor, at one point on the oncolitics case it wasn't unilateral action by the examiner. There was actually an interview between the applicants, between the contested and office action. In that case it was a rejection and then there were numerous problems. I will just mention the interview that happened intervening that caused the examiner to then issue a corrected office action. That's at Joint Appendix 2161-2165 and the relevant part of the interview summary that 2162-63. Now, to the question of where do we draw the line, as Judge Newman just pointed out, we look at the record in this case. We're not here, you know, the examiner already told us where they drew the line when the examiner heard the applicant's concern and decided to redo and resend the restriction requirement. This case came to us under the APA. The parties agreed that the case was amenable to summary judgment at the district court based on the record. And so the case isn't here to discuss what Pfizer could have done or what the examiner could have done or what Pfizer should have done way back in 2005 and 2006. The examiner acting on behalf of  and Pfizer on the line, I think the type of error in this case, the record bears out that it affected Pfizer's ability to reply and that the examiner took it upon himself to reissue and redo the restriction requirement. So with regards to the last point about the PTO's distinction that if it's unilateral examiner action versus an applicant actually following the procedures outlined in the NPEP and bringing the mistake to the attention of the office, I would assume based on the PTO's arguments that this would be treated as a nullity if the examiner had just looked at it as Judge O'Malley hypothesized just now. And that seems somehow to punish the applicant for bringing mistakes to the office's attention. And that seems to be contrary to the whole idea of the traditional process of prosecution where I think when we talk about Judge Dyke's concern as well, that posits that the applicants are more interested in getting patent term adjustment rather than just having their patent issued. Well, to some extent that's true, isn't it, particularly in the pharma area where you may have to wait to market the thing until you get regulatory approvals so if you can get an extension rather than early issuance of the patent. The pre-GATT era of basing your patent term off of the issue date surely greatly incentivized people to push their issue date as far as possible. But the way the patent term adjustment statute and the applicable regulations and provisions of the NPEP are designed is that there is a given thing. There's not just office delay. You're running a risk if you're an applicant and you're trying to game the system to get office delay because after a certain point you're also going to be assessed with applicant delay. And so it's not in the post-GATT world where we're pegging your patent term ultimately off of your filing date and you're making certain adjustments. That's something that Congress has decided and the PTO has interpreted in order to allow you to get additional patent term based on delays on the part of either the office or the applicant. And those are things that are just decided and in the statute. And all we're asking in this case is for the PTO to apply the practices that it applied in Oncolytics and in Janssen and in its regulations and in its own manual of how it instructs examiners to treat restriction requirements. What's the site to the one-month provision that you mentioned in your opening argument? You said in the MPEP there's an applicant raises something within a one-month period. What is that? Sure. That's MPEP Chapter 710.06 and that's entitled Situations where I believe situations where reply period is reset or restarted. 710.06. Okay. Thank you. Okay. Any more questions? Okay. Thank you both. The case    And that concludes the arguing pages. Thank you, Your Honor. Thank you.